# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| 600 LB GORILLAS, INC.,<br><br>                    Plaintiff,<br><br>        v.<br><br>FIELDBROOK FOODS CORP.,<br><br>                    Defendant. | C.A. No. 15-CV-13991 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

600 lb Gorillas, Inc. ("600 lb Gorillas") brings this action against Fieldbrook Foods Corp., d/b/a Fieldbrook Foods, Inc. ("Fieldbrook"), as a result of Fieldbrook's failure to produce ice cream for 600 lb Gorillas' ice cream sandwiches consistent with the parties' agreed-upon specifications. This failure caused 600 lb Gorillas to incur significant damages, including lost profits and damage to its brand and reputation, in excess of $2.5 million.

## PARTIES

1.      600 lb Gorillas is a Massachusetts corporation with a principal place of business located at 558 Washington Street, Duxbury, Massachusetts.

2.      Fieldbrook is a Delaware corporation with a principal place of business located at One Ice Cream Drive, Dunkirk, New York. Mister Cookie Face, Inc. ("Mister Cookie Face"), is a division of Fieldbrook with a manufacturing facility based in Lakewood, New Jersey.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because this lawsuit involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      Venue in this district is proper in accordance with 28 U.S.C. § 1391(a).

## FACTS

5.      600 lb Gorillas is a family business founded by Chris and Paula White.  Paula White is the company's Chief Executive Officer and Chris White is its Chief Operating Officer and Production Manager.

6.      600 lb Gorillas is in the business of selling premium ready-to-bake cookie dough and ice cream sandwiches.  Its products are sold in major retail chains such as BJ's Wholesale Club, Costco, and Walmart, as well as in supermarkets and other foodservice outlets in Massachusetts and throughout the country.

7.      Fieldbrook is a leading U.S. manufacturer of private label frozen novelties and ice cream.  One of Fieldbrook's business lines is to create customized private label programs for its customers.  One of Fieldbrook's customers is 600 lb Gorillas.

8.      600 lb Gorillas has built its reputation on selling premium, all-natural products using the highest-quality ingredients.  For instance, when marketing its ice cream sandwiches, 600 lb Gorillas emphasizes the fact that the first ingredient in its premium ice cream is cream.

9.      600 lb Gorillas began selling frozen cookie dough in 2000.  The business grew dramatically based on its reputation for selling premium, all-natural products with the highest quality ingredients.

10.      At the request of one of 600 lb Gorillas' retail buyers, 600 lb Gorillas entered the ice cream sandwich business in 2008, using its premium cookies and a specially designed ice cream recipe that was high in butterfat and solids (the higher the butterfat and solids in an ice cream, the creamier it is).  In fact, the recipe for 600 lb Gorillas' ice cream puts it into the super

2

premium category, which allows 600 lb Gorillas to differentiate itself from its competitors, who do not use super premium ice cream in their ice cream sandwiches.

11.     Originally, 600 lb Gorillas turned to Rhino Foods in Vermont, to manufacture its ice cream.

12.     On March 25, 2011, 600 lb Gorillas shifted its production to Mister Cookie Face, using a mix provided by United Dairy, Inc.

13.     That ice cream was produced at Mister Cookie Face's facility in Lakewood, New Jersey, and then shipped to 600 lb Gorillas' distributors for delivery to 600 lb Gorillas' retail customers.

14.     During this period of time, while 600 lb Gorillas was using United Dairy's mixes, it received substantial praise for the quality of its product.

15.     In September 2013, in order to capture more of 600 lb Gorillas' business, Fieldbrook offered to manufacture 600 lb Gorillas' ice cream based on its own mix, rather than using the third-party mix being provided by Untied Dairy.

16.     Fieldbrook assured 600 lb Gorillas (specifically, Chris White) that 600 lb Gorilla's ice cream would continue to be produced according to 600 lb Gorillas' same high standards, and that there would be no loss in product quality.  These representations were made orally to Chris White during this September 2013 timeframe.

17.     In particular, the parties expressly agreed that the ice cream being manufactured by Fieldbrook had to contain 14% butterfat and 40% solids, allowing for a variance of no more than 0.5%.  This was an express condition agreed to by the parties.

18.     Fieldbrook understood and accepted this condition, and on that basis 600 lb Gorillas agreed to stop using United Dairy's mix and to use Fieldbrook's in-house mix instead.

3

19.     Fieldbrook's ice cream was initially without issue, commencing in the Summer of 2014 600 lb Gorillas began receiving complaints from its customers that its ice cream quality had diminished.

20.     Between the Summer of 2014 and the present, customers inquired whether 600 lb Gorillas' recipe had changed, and called the "new" formulation "tasteless," "watery," "kind of icky tasting," "awful," "very 'thin' feeling," "like non-dairy ice cream," "poor quality," "horrible," and "not the same product we were use[d] to."

21.     For instance, a regional buyer for Costco, after receiving a sample, asked, "Did you change the formula on the item I have carried the past few years?  The … ice cream [is] not creamy."

22.     These comments were a marked contrast to earlier consumer comments received by 600 lb Gorillas, such as, "The best I have ever had," "quite possibly the most delicious dessert on the plan[e]t," "wonderful!!!  The taste is superior and better th[a]n any I have tasted!"

23.     600 lb Gorillas notified Fieldbrook of these issues on numerous occasions, including in emails and other communications in January, March, July, August, and September 2015.

24.     Fieldbrook repeatedly suggested that other sources were to blame for the subpar ice cream it was manufacturing, such as "retail abuse," the "product sitting out on customer loading dock[s]," or that the cookies being provided for the ice cream sandwiches were too dry and were depleting moisture from the ice cream.

25.     None of these explanations, however, accounted for the fact that the ice cream being manufactured by Fieldbrook did not have the requisite amount of butterfat and solids, and was simply too watery.

ME1 21329782v.3

26.     Around the time 600 lb Gorillas began receiving consumer complaints relating to the quality of its ice cream, it also began noticing a marked decline in sales of its ice cream sandwiches.

27.     There were no other apparent causes for this decline in sales, other than the diminished quality of the ice cream being manufactured by Fieldbrook.

28.     600 lb Gorillas attempted to work with Fieldbrook to remedy the quality issue, but none of the suggestions made by Fieldbrook remedied the quality problems that were being experienced.

29.     600 lb Gorillas even changed its formula based on recommendations from an industry expert in order to address the issue, but that change did not remedy the problem.

30.     This prompted 600 lb Gorillas to subject Fieldbrook's ice cream to independent laboratory testing, including by UL Labs in Canton, Massachusetts, and Deibel Laboratories in Lakeland, Florida.

31.     Testing performed by both of these laboratories confirmed that the ice cream that was tested, produced by Fieldbrook, failed to meet 600 lb Gorillas' requirement that its ice cream contain of 14% butterfat and 40% solids.

32.     Indeed, several of the samples were in the 10% butterfat range, with one sample at 6.84%, with solids in the 33% range, with one sample as low as 28.17%.

33.     These test results indicate that Fieldbrook was diluting the ice cream it was producing for 600 lb Gorillas.

34.     Butterfat and solids content is not attributable to thawing and refreezing during shipment.

35.     Butterfat and solids content would not be reduced on account of the cookies supplied by 600 lb Gorillas to Fieldbrook drawing moisture from the ice cream.

36.     Butterfat and solids content is primarily based on the ingredients used to manufacture the sample being tested.

37.     The independent laboratory tests commissioned by 600 lb Gorillas confirms that Fieldbrook was producing a diluted and non-conforming product.

38.     On information and belief, Fieldbrook knowingly, willfully, and intentionally diluted 600 lb Gorillas' formulation in order to save money on ingredients.  This conduct increased Fieldbrook's profits, but caused significant harm to 600 lb Gorillas' business.

39.     Fieldbrook never disclosed to 600 lb Gorillas that it was diluting its product mix.

40.     600 lb Gorillas would never have agreed to purchase its ice cream from Fieldbrook if it had known the ice cream being manufactured did not meet its strict specifications.

41.     Fieldbrook knew, at all pertinent times, that 600 lb Gorillas was a seller of premium products whose brand and reputation centered around using the highest quality ingredients.

42.     Fieldbrook knew or should have known that by diluting 600 lb Gorillas' ice cream formulation, it would harm 600 lb Gorillas' brand and would cause 600 lb Gorillas to lose sales.

43.     Due to the non-conforming ice cream produced by Fieldbrook, 600 lb Gorillas has suffered damages, including lost profits, in an amount to be determined at trial, but presently calculated to be in excess of $2.5 million, as well as harm to its brand and reputation.

ME1 21329782v.3

## COUNT I
## BREACH OF CONTRACT

44.     600 lb Gorillas repeats and realleges the allegations contained in all prior and subsequent paragraphs of this Complaint as if fully set forth in this Count I of the Complaint.

45.     600 lb Gorillas and Fieldbrook had a valid and binding oral agreement, as evidenced by their writings and subsequent course of performance.

46.     This agreement required Fieldbrook to produce ice cream for 600 lb Gorillas according to 600 lb Gorillas' strict specifications, including using high quality ingredients such that the final product would contain at least 14% butterfat and 40% solids, allowing for a variance of no more than 0.5% for each.

47.     For instance, 600 lb Gorillas provided to Fieldbrook a Formulation Sheet effective March 25, 2015, specifying that its ice cream had to contain 40.15% total solids and 14% fat.

48.     Fieldbrook knew and understood that 600 lb Gorillas was a seller of premium products and that manufacturing an ice cream that met 600 lb Gorillas' strict specifications was a material requirement of the parties' agreement.

49.     Fieldbrook accepted this requirement.

50.     600 lb Gorillas performed all of its obligations under the parties' agreement in all material respects, except when it was excused from doing so based on Fieldbrook's own prior breaches of the parties' agreement.

51.     Fieldbrook breached the parties' agreement by failing to produce ice cream that met 600 lb Gorillas' specifications.

52.     This breach has caused 600 lb Gorillas to incur significant damages, including lost profits and harm to its brand and reputation.

ME1 21329782v.3

## COUNT II
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

53.     600 lb Gorillas repeats and realleges the allegations contained in all prior and subsequent paragraphs of this Complaint as if fully set forth in this Count II of the Complaint.

54.     Inherent in the parties' agreement is a covenant of good faith and fair dealing.

55.     This implied covenant prohibits Fieldbrook from undertaking conduct to deprive 600 lb Gorillas from obtaining the fruits of its bargain.

56.     Through its above-described conduct, including, but not limited to, its dilution of 600 lb Gorillas' formulation and its failure to manufacture a product that met 600 lb Gorillas' specifications, Fieldbrook has breached the implied covenant of good faith and fair dealing.

57.     As a result of Fieldbrook's breach of the implied covenant of good faith and fair dealing, 600 lb Gorillas has suffered significant damages.

## COUNT III
## NEGLIGENT MISREPRESENTATION/OMISSION

58.     600 lb Gorillas repeats and realleges the allegations contained in all prior and subsequent paragraphs of this Complaint as if fully set forth in this Count III of the Complaint.

59.     In the course of Fieldbrook's business, Fieldbrook, through its actions and inactions, supplied false information to 600 lb Gorillas, namely, that the ice cream it was manufacturing for 600 lb Gorillas met 600 lb Gorillas' strict specifications.

60.     Fieldbrook failed to exercise reasonable care and/or competence in making these representations, such as by conducting adequate product testing.

61.     600 lb Gorillas reasonably and justifiably relied on these representations by selling its products to consumers, expecting that the products met its strict specifications.

ME1 21329782v.3

62.     As a result of Fieldbrook's negligent misrepresentations, 600 lb Gorillas has suffered significant damages.

**COUNT IV**
**VIOLATION OF MASS. GEN. L. CH. 93A, §§ 2 AND 11**

63.     600 lb Gorillas repeats and realleges the allegations contained in all prior and subsequent paragraphs of this Complaint as if fully set forth in this Count IV of the Complaint.

64.     In manufacturing ice cream, Fieldbrook is engaged in trade and/or commerce.

65.     600 lb Gorillas, in conducting trade and/or commerce, suffered a loss of money as a result of Fieldbrook's use of unfair methods of competition and/or unfair and/or deceptive acts and/or practices as previously described in this Complaint.

66.     Fieldbrook's unfair and deceptive acts and practices were knowing and/or willful.

67.     Fieldbrook's unfair and deceptive acts and practices caused 600 lb Gorillas substantial damages, and is causing it to incur substantial attorneys' fees.

68.     The actions and transactions constituting the alleged unfair method of competition and/or the unfair and/or deceptive acts or practices occurred primarily and substantially in Massachusetts as that is where 600 lb Gorillas is based, that is where 600 lb Gorillas suffered its lost profits and harm to its brand, and that is where many of the incorrect statements and wrongful omissions were received.  Moreover, Massachusetts is one of 600 lb Gorillas' largest markets, and is where BJ's Wholesale Club, one of its largest customers, is based.  Further, Fieldbrook knowingly shipped non-conforming products into Massachusetts for sale on 600 lb Gorillas' behalf to Massachusetts consumers when it knew or should have known that the products were of subpar quality and thus would impact 600 lb Gorillas' sales and brand.  As such, the center of gravity of the events giving rise to this claim are in Massachusetts (particularly with regard to the sales actually lost in Massachusetts).

9

**WHEREFORE**, plaintiff 600 lb Gorillas hereby demands judgment in its favor and against Fieldbrook as follows:

1.      For compensatory damages, including a refund of funds paid for non-conforming product, lost profits, and compensation for the harm caused to 600 lb Gorillas' brand and reputation;

2.      For attorneys' fees and costs of collection under the Massachusetts Consumer Protection Act;

3.      For double and/or treble damages under the Massachusetts Consumer Protection Act; and

4.      For all other and further relief the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

600 lb Gorillas hereby demands a trial by jury on all claims so triable.

Respectfully submitted,

**600 LB GORILLAS, INC.**

By its Attorneys,

MCCARTER & ENGLISH, LLP

/s/ David Himelfarb
David Himelfarb, BBO #649596
265 Franklin Street
Boston, MA 02110
Tel. 617-449-6500
Fax 617-607-9200
dhimelfarb@mccarter.com

Dated :  December 1, 2015

ME1 21329782v.3